## The First National Bank of Plymouth v. Bo-Jack Manufacturing Corp.

*Robert Hourigan,* for Federal government.
*Julius Altman,* for Commonwealth.
*James P. Harris,* for wage claimants.

PINOLA, J., November 7, 1957.—We have for distribution the sum of $1,008.72, the proceeds of the sale of certain personal property by the sheriff on September 7, 1949, which have been paid into court.

Upon a judgment entered to the above term and number by the First National Bank of Plymouth, execution issued.

Before the sale was had, 16 employes gave written notice of claims in the amount of $830.45 for services

performed from April 29 to May 28, 1949, claiming preference under the Act of April 9, 1872, P. L. 47, as amended.

On April 29, 1957, another employe filed a claim in the sum of $345. Objection that it was filed too late must be sustained.

The Commonwealth had entered a lien on September 10, 1948, to no. 1883, October term, 1948, in the sum of $2,759.13, for unpaid unemployment compensation contributions due under the Act of December 5, 1936, P. L. [1937] 2897, as amended.

On February 15, 1949, the collector of internal revenue had entered a lien to no. 530, March term, 1949, for the sum of $978.86 for Federal insurance contributions due during the period ending September 30, 1948. He filed another lien on June 6, 1949, to no. 806, July term, 1949, for the sum of $6,830.83 for withholding taxes, Federal insurance contributions and unemployment taxes due during the taxable period ending March 31, 1949.

The Federal government, the State and the employes all claim the funds which we have for distribution.

We will consider first the claim of the United States.

Counsel for the parties have agreed that defendant company was insolvent. However, it had never been placed in bankruptcy, and therefore the provisions of the Bankruptcy Act governing priority distribution are not applicable.

Nor is Revised Statutes, sec. 3466, 31 U. S. C. §191, applicable.

Under that section:

"Whenever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a volun-

tary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

A provision in similar language has been in the statutes since 1797 and has always been construed as being inapplicable except where, in the case of a living debtor, his insolvency is a formal one evidenced by a bankruptcy, receivership or assignment for the benefit of creditors: Maryland Casualty Company v. United States, 53 F. Supp. 436. See also Leggett v. Southeastern People's College, 234 N. C. 595, 68 S. E. 2d 263.

Mere inability of the debtor to pay all his debts is not an insolvency, but it must be manifested in one of the three ways pointed out in the explanatory clause of the section: Conard v. Atlantic Insurance Co., 1 Pet. 386, 438, 7 L. Ed. 189.

The Federal government rests its claim upon sections 3670 and 3672 of the Internal Revenue Code of February 10, 1939, 26 U. S. C. §3670, 53 Stat. 448.

Section 3670 provides that:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

This section is limited by section 3672, which declares that:

"Such lien (for unpaid U. S. taxes) shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the collector . . . [in accordance with the law of the State . . . in which the property subject to the lien is situated.] . . . whenever the State . . . has by law authorized the filing of such notice."

In Ersa, Inc., v. Dudley, 234 F. 2d 178 (3rd C. C.), Judge Maris, in a similar case, determined that the lien of the Commonwealth for unpaid contributions to the unemployment compensation fund was governed by the decision of the State court. He said, page 181:

". . . we must bear in mind that the Supreme Court of the United States has laid down the rule that while in federal tax cases a state court's characterization of a lien as choate and perfected is not binding on the federal courts, the characterization by a state court of a lien as inchoate is conclusive on the federal courts."

He pointed out that under the statutes of our State the lien of a judgment attaches to personal property only from the time that a writ of fieri facias or other writ of execution is delivered to the sheriff to be executed: Act of June 16, 1836, P. L. 755, sec. 39, 12 PS §2291.

And he declared that the Supreme Court of Pennsylvania in Commonwealth v. Lombardo, 356 Pa. 597, 52 A. 2d 657, in affirming a comprehensive opinion by Judge Hoban, "held that the lien of the Commonwealth under Section 308.1 of the Unemployment Compensation Law, even though reduced to judgment, did not bind personal property of a delinquent employer which he had transferred to a third person before the Commonwealth issued its writ of fieri facias." Continuing, he said:

"It thus appears that the mere filing of the lien for unpaid contributions to the Pennsylvania Unemployment Compensation Fund, and its reduction to judgment does not create a perfected lien upon the delinquent employer's personal property. The filing of the lien is only 'a *caveat* of a more perfect lien to come'. . . . It is not actually perfected as a choate lien on personal property until the writ of fieri facias has been issued and delivered to the sheriff for execution."

522

Accordingly, Judge Maris held that the district court erred in finding that the lien of the Commonwealth was first in time and therefore first in right. Following that decision, we conclude that since the lien of the Commonwealth is not first in time, both liens of the Federal government are entitled to priority.

The lien for the wage claims dates from the time the wages were earned, to wit, April 29, 1949: Harrisburg Trust Co. v. Snyder, 60 D. & C. 503, 506. And, therefore, the first lien of the Federal government antedates them.

The government is entitled to interest from the date of filing to the date of the sale. At six percent, the interest on $978.86 from February 15, 1949, to September 7, 1949, amounts to $33.28, making the total claim of the government, on the first lien, $1,012.14.

Under the circumstances, we enter the following

*Order*

Now, November 7, 1957, at 10 a.m., since the claim of the United States exhausts the fund paid into court, it is hereby ordered, adjudged and decreed that the prothonotary pay to the United States the funds now in his possession in this matter.